# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ] | |
| ] | |
| v. ] | 4:21-cr-311-KOB-JHE |
| ] | |
| GEORGE WASHINGTON ] | |
| MCCAIN, III ] | |
| Defendant. | |

## MEMORANDUM OPINION

This matter comes before the court on Defendant George Washington McCain, III's motion to suppress evidence (doc. 13); the Government's response (doc. 15); and Mr. McCain's reply (doc. 23).[1] Mr. McCain maintains that the court should suppress his pre-*Miranda* and post-*Miranda* statements that led to the location of a firearm under the passenger seat of his truck. That evidence then led to the grand jury indictment of Mr. McCain for an alleged violation of 18 U.S.C. § 922(g)(1), felon in possession of a firearm, that is currently before the court. (Doc. 1). For the following reasons, the court will deny the motion as to Mr. McCain's statements regarding the location of the firearm but grant it as to the statements the Government does not intend to offer.

---

[1] Mr. McCain admits that his reply is untimely. (Doc. 23 at 1). But, because the Government has no objection to the untimeliness of the reply, the court has considered it in making its decision.

1

*Background Facts*

While standing outside conducting a business check at the Shell Service Station at 10088 US Highway 411, Odenville police officer Joshua McDonald heard multiple gun shots coming from the direction of the Dirty Habits Bar. Officer McDonald grabbed his firearm and immediately ran towards the bar. When he entered the bar parking lot, Officer McDonald observed two black males, later identified as Mr. McCain and Cordale Davis, getting into a white pickup truck. Officer McDonald ordered the two males to step away from the truck and show their hands.

Officer Foster was inside the Shell Station at the time of the gun shots but arrived at the parking lot shortly after Officer McDonald. He assisted Officer McDonald in detaining both men. Officer McDonald placed Mr. McCain in handcuffs behind his back and searched his person. Officer McDonald activated his body camera while handcuffing Mr. McCain, but no audio was recorded for sixty seconds.

During the time that the audio was not recording, Officer McDonald asked Mr. McCain "Man, what the heck? Why are you out here shooting?" Mr. McCain responded that "it was the Fourth of July and he just wanted to celebrate by shooting some rounds into the air." Officer McDonald then asked Mr. McCain about the location of the firearm, and he stated that it was under the passenger seat.

The audio on Officer McDonald's body camera activated when he placed

2

Mr. McCain in the police vehicle.[2]  While seated in the police car, Mr. McCain asked Officer McDonald to not send him to prison, and Officer McDonald responded, "Hop in and sit down. We'll talk in a minute. We'll talk in a minute. Hop in and sit down. What you did was stupid, man."  Mr. McCain responded, "I know it was stupid. I know it was stupid."

Officer McDonald then retrieved a Ruger P90 .45 caliber pistol from underneath the passenger seat of Mr. McCain's truck and placed the firearm in his patrol vehicle. He then walked over to Mr. Davis who was handcuffed, read Mr. Davis his *Miranda* rights, and asked him about what happened.  Mr. Davis indicated that he did not see anything.

Officer McDonald then discussed the situation with the other officers who had arrived on the scene.  He told them that Mr. McCain was the one who shot the firearm.  Officer McDonald returned to his police vehicle and read Mr. McCain his *Miranda* rights, during which time Mr. McCain stated, "I'm aware of all of them rights." Mr. McCain agreed to answer Officer McDonald's questions about what happened.

Mr. McCain told Officer McDonald that he fired the gun in the air because it was "4th of July man. Just enjoying. Just enjoying. That's it man. That's it man"; that he was not involved in an altercation; that he was on probation; and that he did

---

[2]  The court notes that these facts leading up to and during the 60 seconds that Officer McDonald's body camera did not capture audio are undisputed.  And the court reviewed the footage and audio of the body camera that accurately reflects the facts after that point.

not know who owned the gun. After interviewing a bar patron who identified Mr. Davis as the shooter of the gun, Officer McDonald asked Mr. McCain if he was trying to cover for Mr. Davis. Mr. McCain stated that he did not want to get Mr. Davis in trouble and asked Officer McDonald whether answering further questions would result in only one of them going to jail. Officer McDonald told Mr. McCain that they were both in trouble and that any further responses would have no effect on that fact.

## *Discussion*

### *Pre-Miranda Statements*

Mr. McCain argues that he made his pre-*Miranda* statements during a custodial interrogation, making the evidence found as a result of those statements inadmissible. (Doc. 13 at 5-7). The Government agrees that Mr. McCain was "'in custody' for *Miranda* purposes at the time Officer McDonald inquired about what happened and the location of the firearm." But the Government argues that Officer McDonald's pre-*Miranda* question regarding the location of the firearm and Mr. McCain's response that it was under the passenger seat of his truck was lawful because "public safety was at risk until officers located and neutralized the gun that Officer McDonald had heard shot just moments earlier." (Doc. 15 at 5-6). The court agrees.

A police officer may not conduct a custodial interrogation before he warns a suspect of his rights against self-incrimination by giving him his "*Miranda* rights."

*Miranda v. Arizona*, 384 U.S. 436, 445 (1966).  But the Supreme Court established a narrow exception to the *Miranda* requirement for situations involving a threat to public safety.  *New York v. Quarles*, 467 U.S. 649 (1984).  The public safety exception "allows officers to question a suspect without first Mirandizing him when necessary to protect either themselves or the general public." *United States v. Newsome*, 475 F.3d 1221, 1224 (11th Cir. 2007) (citing *Quarles*, 467 U.S. at 655-58).

 Here, the public safety exception applies to Officer McDonald's pre-*Miranda* questioning of Mr. McCain regarding the location of the gun.  Officer McDonald had just heard multiple gunshots coming from a nearby bar and immediately ran in the direction of that gunfire with his weapon drawn.  When he saw Mr. McCain and Mr. Davis getting into a truck within minutes of hearing gunshots in that area, Office McDonald did not know who shot the firearm or the whereabouts of the firearm. When he handcuffed Mr. McCain and asked him what happened and the location of the firearm, that firearm could have been concealed in the truck, in the bar, in the parking lot and posed a danger to the officers and the public.

 Mr. McCain argues that the facts in both *Quarles* and *Newsome* were more severe than the facts in this case, and that Officer McDonald had no reason to believe that "a violent crime had been committed."  The court disagrees.  Although *Quarles* involved a defendant who allegedly raped a woman at gunpoint and fled

5

into a grocery store and *Newsome* involved the investigation of a defendant who had allegedly shot his wife and child, the legal principals of the public safety exception certainly apply in Mr. McCain's case despite these factual differences. *See Quarles*, 467 U.S. at 655-59; *Newsome*, 475 F.3d at 1223-25.

Officer McDonald heard multiple gun shots, drew his weapon, and immediately ran in the direction of the gunfire. At that point, Officer McDonald had every reason to believe that someone may have committed a violent crime involving a firearm. When he encountered Mr. McCain in the area of the gunshots, Office McDonald detained him, asked the location of the gun, and secured it. These undisputed facts show that the potential danger to Officer McDonald, Officer Davis, the bar patrons, and others in the area from those gunshots justify Officer McDonald questioning Mr. McCain without first giving him a *Miranda* warning.

The fact that Officer McDonald's pre-Miranda questioning included more than just the location of the gun does not change the court's analysis. As the Eleventh Circuit stated in *Newsome*, "an officer is not expected to craft a perfect question in the heat of the moment." *Newsome*, 475 F.3d at 1225 (finding that the question of "is there anything or anyone in the room that we should know about" was not problematic even though it was also broad enough to elicit other information). And the Government asserts in its response that, because Mr. McCain was in custody when he made his pre-*Miranda* statements, the

Government does not intend to offer Mr. McCain's statements that he "(1) was shooting because it was Fourth of July and he wanted to celebrate, (2) was going to jail, or (3) did something stupid." (Doc. 15 at 8).

The court finds that Officer McDonald's pre-*Miranda* questions regarding the location of the firearm reasonably involved protecting both the officers on the scene and the nearby bar patrons, and thus fall under the public safety exception to the *Miranda* requirement. So, the court will deny Mr. McCain's motion to suppress his pre-*Miranda* statements as to the location of the firearm but grant it as to his pre-*Miranda* statements that the Government does not intend to offer.

### *Post-Miranda Statements*

Mr. McCain also argues that his post-*Miranda* statements are inadmissible because he did not knowingly and voluntarily waive his rights. (Doc. 13). He specifically argues that his post-*Miranda* waiver was invalid because the second interrogation by police was a continuation of his alleged unlawful pre-*Miranda* interrogation. Mr. McCain also asserts that his post-*Miranda* waiver was invalid because his "intoxicated state rendered his statements on the scene involuntary." (Doc. 13 at 7-9). The court disagrees with both arguments.

Mr. McCain argues that his *Miranda* waiver was not voluntary because his pre-*Miranda* statements were not voluntary. But the court has already found that his pre-*Miranda* statement regarding the location of the gun falls under the public safety exception to the *Miranda* requirement.

7

And the Government cites the Supreme Court decision in *Oregon v. Elstad*, in which the Court rejected the defendant's argument that post-*Miranda* statements must be suppressed because officers failed to advise the defendant of his *Miranda* rights prior to his first confession. (Doc. 15 at 12) (citing *Oregon v. Elstad*, 470 U.S. 298, 302 & 309 (1985)). In *Elstad*, the Supreme Court held that "absent deliberately coercive or improper tactics in the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion." *Elstad*, 470 U.S. at 314. The record in this case contains no evidence that Officer McDonald coerced or threatened Mr. McCain in any way to waive his *Miranda* rights.

Mr. McCain argues that the Government's reliance on *Elstad* is "misplaced," and that the court instead should follow the Supreme Court's decision in *Missouri v. Seibert*; in *Seibert*, the Court two decades after *Elstad* found that the "tactic of using a prior confession to lower the inhibitions of the defendant against providing the same confession a second time after being read his *Miranda* rights" invalidates the waiver. (Doc. 23 at 5) (discussing *Missouri v. Seibert*, 542 U.S. 600, 616 (2004)). But *Seibert* is distinguishable.

The Court in *Seibert* dealt with a "police protocol for custodial interrogation that calls for giving no warnings of the rights to silence and counsel until after interrogation has produced a confession." After the confession, the interrogating officer would give the *Miranda* warning and then have the suspect "cover the same

8

ground a second time." The question before the Court in *Seibert* was the admissibility of the repeated statement given those tactics. The Court in Seibert held that "a statement repeated after a warning *in such circumstances* is inadmissible." *Seibert*, 542 U.S. at 604.

Mr. McCain's case does not involve these circumstances. The facts in *Seibert* did not involve a pre-Miranda statement under the public safety exception to the *Miranda* requirement. Instead, *Seibert* involved a deliberate choice by the police to conduct custodial interrogations using an unlawful tactic to obtain a confession. Neither party has argued that Officer McDonald used any unlawful tactic to obtain Mr. McCain's first statement regarding the location of the firearm. And the court has found that Officer McDonald's pre-*Miranda* questions regarding the location of the firearm were lawful under the public safety exception to the *Miranda* requirement.

Mr. McCain also argues that his intoxicated state rendered his post-*Miranda* statements involuntary. (Doc. 13 at 9-10). The Government argues that Mr. McCain's post-*Miranda* waiver of his rights was voluntary because "Officer McDonald's body camera footage shows that Mr. McCain was coherent and cognizant of the situation when he waived his *Miranda* rights and spoke with police." (Doc. 15 at 11-12). The court agrees with the Government.

A confession is not voluntary if a defendant is "unconscious or drugged or otherwise lacks capacity for conscious choice." *Schneckloth v. Bustamonte*, 412

9

U.S. 218, 224 (1973). The court watched the entire body camera footage of the incident involving Mr. McCain and finds that Mr. McCain was not intoxicated to the point of "lack of capacity for conscious choice." During the events, Mr. McCain made several conscious choices, including not wanting to make a statement that would send Mr. Davis to jail. Mr. McCain provided his name to Officer McDonald, followed instructions to exit the truck, entered the patrol car as instructed, and responded appropriately to Officer McDonald's instructions and questions. Mr. McCain did not fall in and out of unconsciousness during the footage, walked steadily, and repeatedly stated that he was aware of his rights.

The court finds that Mr. McCain knowingly, voluntarily, and intelligently waived his *Miranda* rights and his subsequent statements were voluntary.

So, the court will deny the motion to suppress as to Mr. McCain's pre- and post-*Miranda* statements regarding the location of the firearm but grant it as to the statements the Government does not intend to offer (doc. 13).

The court will enter a separate Order doing so.

**DONE** and **ORDERED** this 2nd day of May, 2022.

_____
**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE